PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANET M. KEMERER, | ) | |
| | ) | CASE NO. 4:12CV2977 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHESAPEAKE EXPLORATION, LLC, *et al.*, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 14] |

This matter is before the Court upon the Motion to Remand to State Court filed by Plaintiff Janet M. Kemerer. ECF No. 14. Defendants Chesapeake Exploration, LLC; Chesapeake Appalachia, LLC; Statoil USA Onshore Properties, Inc.; and Total E&P USA, Inc. ("Defendants") responded (ECF No. 21), and Plaintiff replied (ECF No. 24). For the reasons that follow, the Court grants Plaintiff's motion and remands the case to State court.

**I. Background**

The instant case was removed from the Court of Common Pleas, Columbiana County, Ohio, on December 4, 2012 pursuant to 28 U.S.C. §§ 1441 and 1446, and based upon diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1. In her Complaint, Plaintiff alleges that Defendants breached the terms of an oil and gas lease, rendering the lease void. ECF No. 1-1 at 16. Plaintiff sought declaratory judgment, punitive damages and attorney fees. ECF No. 1-1 at 18.

After removal, Defendants filed a Motion to Dismiss and Strike Certain Claims and Allegations. ECF No. 8. Defendants asserted, among other things, that punitive damages are

(4:12cv2977)

unavailable in breach of contract cases.  ECF No. 8 at 7.  Plaintiff thereafter filed a First Amended Complaint, wherein she retained her prayer for punitive damages and attorney fees. ECF No. 9.  After initial disclosures were made, Plaintiff filed a Motion to Remand, arguing that Defendants failed to establish that the amount in controversy more likely than not exceeds $75,000 as required by 28 U.S.C. § 1332.  ECF No. 14 at 1.  Plaintiff also filed supplemental initial disclosures including a copy of the contingent fee contract with her attorney, but did not disclose the amount of punitive damages or attorney fees that she sought.  ECF Nos. 16 at 2; 16-1.

Communications between the parties ensued, and Plaintiff admitted that her request for punitive damages and attorney fees, in this breach of contract case, was in error.  ECF No. 18-1 at 4.  Although both parties now agree punitive damages and attorneys fees are uncollectible, Defendants argue that Plaintiff should have to disclose the previously sought damages regardless, because such relief was requested at the time of removal and these amounts should be used to satisfy the amount in controversy requirement.[1]  ECF No. 21 at 4.  Defendants also argue that, even without such damages, their submitted affidavit is sufficient to establish the jurisdictional amount.  ECF No. 21 at 2.

## II.  Legal Standard

A defendant seeking removal on the basis of diversity jurisdiction has the burden of proving by a preponderance of the evidence that the complete diversity and amount in

---

[1] The parties notified the Court of a discovery dispute regarding the initial disclosures, and the Court held a telephone conference on March 5, 2013.

(4:12cv2977)

controversy requirements are met. *See, e.g.*, *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993), overruled on other grounds by *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192-93 (2010). The right of removal is determined by review of a plaintiff's pleading at the time of the petition for removal. *Ramski v. Sears, Roebuck, & Co.*, 656 F.Supp. 963, 965 (N.D.Ohio 1987). "A court may, however, look at subsequent pleadings and proceedings in a case . . . to the extent that they 'shed light on the facts as they existed at the outset of the litigation and on the actual interests of the parties.'" *Hrivnak v. NCO Portfolio Mgmt.*, 723 F.Supp.2d 1020, 1024 (N.D.Ohio 2010) ( citing *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 n. 3 (7th Cir. 1981)). A district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990) (citations omitted). The removal petition is to be strictly construed, and the district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party. *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

In actions seeking a declaratory judgment, the amount in controversy is measured by "the value of the object of the litigation." *Northup Properties, Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In the context of an oil and mineral lease, the Sixth Circuit "calculate[s] the amount in controversy by accounting for the mineral interest in the land, and not merely the possessory interest.'" *Northup Properties*, 567 F.3d at 770 n.1; *Caldwell v. OHTEX Energy Co.*,

(4:12cv2977)

2011 WL 1465997, at * 2 (S.D.Ohio, April 18, 2012). "In valuing mineral leases, federal courts require competent proof." Id.

### III.  Analysis

In support of its notice of removal, Defendants supplied the Court with an affidavit of Jeffrey Pinter, an Operations Land Manager for Defendants Chesapeake Exploration and Chesapeake Appalachia.  ECF No. 1-5 at 1.  Mr. Pinter attests that

> [t]he current market price for oil and gas leases in the Columbiana County area routinely exceeds $1,000.00 per acre.  At 127.453 acres, this would result in a value of at least $127,453.00.  Further, if the Lease is declared 'expired,' it would cost Chesapeake more than $75,000 (exclusive of interest and costs) to re-acquire the oil and gas rights in the 127.543 acres, assuming those rights could be re-acquired.

ECF No. 1-5 at 2.

Plaintiff argues that this affidavit is based on assumptions that render it highly speculative.  ECF No. 14 at 8.  Plaintiff alleges that Mr. Pinter's statements are self-serving and fail to provide reliable and competent proof that the amount in controversy more likely than not exceeds $75,000.  ECF No. 14 at 8-9.  Moreover, Plaintiff argues that case law demonstrates a preference for expert testimony and a thorough analysis of the various factors influencing the profitability of mineral leases.  ECF No. 14 at 10-11.

#### A.  The Mineral Interest in the Land

Defendants argue that the Pinter affidavit is sufficient to satisfy the amount in controversy, and that Plaintiff's challenge is "tethered to no evidence, and cases that are inapplicable."  ECF No. 21 at 6.  Defendants further contend that there are two monetary

(4:12cv2977)

components to a disputed mineral lease: "1) an up-front payment for just entering into the lease (a signing bonus); and 2) the value of the minerals produced during its life." ECF No. 21 at 6.

In support of its argument that the up-front payment of the lease is sufficient in establishing the jurisdictional amount, Defendants cite *Caldwell* and *Northup*. ECF No. 21 at 6. In *Caldwell*, the court considered the purchase price of the lease, which was $42,772.50. 2011 WL 1465997, at *4. In *Northup*, the initial payment to the plaintiff was $1.00-per-acre each year, which "amounted to approximately $4,300 each year." 567 F.3d at 769.

Defendants insist that the up-front payment in the instant case is $127,000, which is based upon Mr. Pinter's estimate. ECF No. 21 at 6. However, the "up-front" payment in *Caldwell* and *Northup* represented the amount of money the plaintiff received upon executing the lease, not how much the lease is allegedly worth.[2] It is undisputed that Plaintiff has not received an up front payment of $127,000 or any amount in excess of $75,000. Rather, the Lease, signed in 2008, recites "[t]hat Lessor [Plaintiff], for and in consideration of one dollar ($1.00) and other valuable consideration in hand paid by Lessee [Defendants] . . ." ECF No. 1-6 at 1. Thus, Defendants' assertion that the up-front payment to Plaintiff is $127,000 misrepresents the facts of the instant case and misapplies *Caldwell* and *Northup*.

---

[2] Even Defendants concede that the up-front payment reflects "payment for just entering into the lease (a signing bonus)" ECF No. 21 at 6. Defendants do not, however, submit evidence of an up-front payment made to Plaintiff at the time she entered into the lease. Plaintiff, however, points to paragraph 19 in the lease, which grants Defendants, upon expiration of the lease, an option to extend or renew under similar terms a like lease. ECF Nos. 1-6 at 3; 24 at 1. Plaintiff further submits a letter to her from Jeffrey Pinter dated January 3, 2013, in which Defendants purported to exercise the option, extending the lease and including a check for $1,275.00. ECF No. 24-1 at 2.

5

(4:12cv2977)

Defendants next assert that "there is no need to establish anything beyond the amount of the up-front payment," and that the "mineral interest analysis in *Usery*[3] and *Caldwell* has no relevant application."[4]  ECF No. 21 at 7.  The Court disagrees.  An accounting of the mineral interest is the rule articulated by the Sixth Circuit in *Northup*, 567 F.3d at 771, and applied in *Caldwell*, 2011 WL 1465997, at *2.  The *Northup* court relied upon a Petroleum Engineer's affidavit containing estimates of

> (1) the 'future cash flows' from the natural gas well at $168,147; (2) the discounted present value of the well as between $106,874 and $131,426; (3) the value of the remaining undeveloped acreage of the entire leasehold estate at $426,700; and (4) the initial cost of drilling the well as exceeding $75,000.

567 F.3d at 769.

Conversely, Defendants in the instant case offer no accounting of the mineral interest.  They do not address issues such as (1) the estimated future production under the lease, (2) the

---

[3] *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1020 (8th Cir. 2010) relied upon *Northup* in deciding that the defendant's offered proof was insufficient to establish the jurisdictional amount, reversing the district court and remanding the case to State court.  The *Usery* court contrasted the defendant's submitted affidavits, general and speculative in nature, with the affidavits submitted in *Northup*, which contained express attestations "both to the value of the relevant mineral interest's discounted cash flow and to the costs of drilling and extraction."  *Id*.

[4] Defendants cite *David A. Waldron and Associates, Inc. v. Loon, LLC*, 2012 WL 1598122 (N.D.Ohio, April 17, 2012) for the proposition that expert testimony or a future potential cash flow estimation is not required where the value of a replacement lease is greater than $75,000.  ECF No. 21 at 7.  In *Waldron*, the court found that expert testimony was not required to evince the value of the mineral lease in light of a submitted declaration that an interested third party had offered more than $100,000 for an oil and gas lease of the property.  2012 WL 1598122, at *5.  Defendants in the instant case do not present the Court with a declaration that an interested third party has offered more than $75,000 for the oil and gas lease at issue.

6

(4:12cv2977)

cost of drilling a well[5], (3) the value of the undeveloped acreage, (4) the book value of the asset, (5) production from nearby wells, and (6) third-party offers to lease.  See *Caldwell*, 2011 WL 1465997, at *2-3; *David A. Waldron and Associates, Inc. v. Loon, LLC*, 2012 WL 1598122 (N.D.Ohio, April 17, 2012).

Instead, Defendants argue that Plaintiff's Fee Agreement entered into with her attorney demonstrates the value of the lease, because it "implicitly acknowledges that Ms. Kremerer and her attorneys know that the value of this litigation exceeds $75,000."  ECF No. 21 at 9. Defendants point out that Plaintiff's attorney will be paid five percent of the up-front payment on a new lease.  ECF No. 21 at 9.  Defendants, therefore, insist that the amount of expenses incurred by Plaintiff's attorney to date and the potential expenses incurred throughout this litigation instruct that the amount of the lease is worth more than $75,000 because the "idea that [Plaintiff's attorney] would have undertaken such a complex piece of litigation for such a small maximum fee strains credulity."  ECF No. 21 at 9.

Defendants cite no legal authority for this approach.  The Court declines to accept speculative allegations attacking a fee agreement in an attempt to show that Plaintiff and her attorney believe the lease is worth more than $75,000, when case law instructs the correct analysis is to consider specific evidence of the value of the mineral interest, *see Northup*, or concrete evidence of a third-party offer to lease, *see Waldron*.  Defendants have not produced evidence of either type.

---

[5] A well has not been drilled on the property.  ECF No. 1-1 at 12.

(4:12cv2977)

The Court finds that the only evidence produced by Defendants, the Pinter affidavit, is more analogous to the insufficient affidavit in *Caldwell* than the sufficient affidavit in *Northup*. In *Caldwell*, the court found that the affidavit submitted by the sole member of the defendant company estimating the probable profitability of extracting oil and gas from the plaintiffs' property exceeded $75,000 fell short. 2011 WL 1465997 at *4. The court concluded that it "lacks analysis or any basis for its conclusion. . . [no] estimate of how long the mineral interest might be reasonably expected to produce; indicate what value, if any, he gave the asset on his books; or state whether the income generated would be gross income or net income, which would take into account various costs of development and extraction." *Id.* The court further noted that the affiant's inability to predict the profitability of the lease was hampered because no wells had been developed on the land. *Id.*

In the instant case, the affidavit submitted by Pinter, an Operations Land Manager for the Chesapeake Defendants whose responsibilities include the acquisition and negotiation of oil and gas leases, stated that the current market price for oil and gas leases in the county area "routinely exceeds $1,000 per acre." ECF No. 1-5 at 1. This evidence alone is insufficient, as it does not adhere to the standards set forth in *Northup*, *Caldwell* and *Waldron*; nor does it convincingly advance a reliable additional method of determining the value of the lease. Defendants have thus not satisfied their burden to show that it is more likely than not that the jurisdictional amount exceeds $75,000.

Finally, Defendants assert that if the Court does not find that the Pinter affidavit and Plaintiff's Fee Agreement sufficiently establish jurisdiction, the Court should conduct further

8

(4:12cv2977)

proceedings to determine the amount in controversy. ECF No. 21 at 12. Defendants offer to supplement the Pinter affidavit, and state that they are entitled to know whether Plaintiff has received any offers for a new lease. ECF No. 21 at 13. The Court notes that Defendants are aware that Plaintiff has not received any offers for a new lease. ECF No. 22-5 at 1. Moreover, the time for Defendants to have supplemented the Pinter affidavit or provide any additional evidence to the Court was when Defendants responded to Plaintiff's motion to remand, which squarely put the jurisdictional amount at issue. Defendants chose not to provide additional evidence at that time, and the Court declines the opportunity to invite further briefing on the matter.

### B. Punitive Damages and Attorney Fees

Defendants argue that Plaintiff's requested punitive damages and attorney fees should be disclosed and added to the jurisdictional amount because courts consider the jurisdictional amount at the time of the petition for removal. ECF No. 21 at 1-2. At the time of the petition for removal, Plaintiff's Complaint requested punitive damages and attorney fees. ECF No. 1-1 at 18. However, it is now undisputed that Plaintiff is not and was not entitled to recover punitive damages or attorney fees pursuant to her cause of action. ECF No. 18-1 at 4.

"Lack of the jurisdictional amount from the outset—although not recognized until later—is not a subsequent change that can be ignored." *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 628 (6th Cir. 2009) (quoting *Jones v. Knox Exploration Corp.*, 2 F.3d 181, 183 (6th Cir. 1993)). Accordingly, "[a] claim is less than the jurisdictional amount where the 'applicable state law bar[s] the type of damages sought by plaintiff.'" *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921

9

(4:12cv2977)

(6th Cir. 2000) (quoting *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973)).  Ohio law does not provide for punitive damages in contract disputes, *see Digital & Analog Design Corp. v. North Supply Co.*, 540 N.E.2d 1358, 1367 (Ohio 1989), nor does Ohio law provide for attorney fees in the absence of bad faith or statutory authorization, *see Pegan v. Crawmer*, 679 N.E.2d 1129 (Ohio 1997).  Because Plaintiff mistakenly requested damages she was not entitled to recover, those damages were not in controversy at the time of removal and, therefore, can not be considered in determining the jurisdictional amount.  *See Jones*, 2 F.3d at 183; *see also Wertz v. LPS Nat. Flood, L.P.*, 2009 WL 1098093, *5 (E.D.Tenn., April 23, 2009) (finding that plaintiff attorney's good faith error in drafting the damages section of the complaint amounted to a clerical mistake that did not provide the court with jurisdiction).

### IV.  Conclusion

For the aforementioned reasons, Plaintiff's Motion to Remand is granted.  ECF No. 14.  The case is remanded to the State court from which it was removed, 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").


    IT IS SO ORDERED.


 March 29, 2013                            */s/ Benita Y. Pearson*
Date                                             Benita Y. Pearson
                                                          United States District Judge